Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301

May 23, 2003

RE: 02-14529-JJ      Richard Cottone v. Kenneth C. Jenne, II
DC DKT NO.:  00-07545 CV-WJZ

TO:   Clarence  Maddox

CC:   Michael Ross Piper

CC:   Christine M. Duignan

CC:   Barbara Ann Heyer

CC:   Administrative File





# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties



Filed by Appeals
Non - Compliance with
FRAP 4 (b)

MAY 2 8 2003

Ft. Lauderdale Clerk's Office

May 23, 2003

Clarence  Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale  FL  33301

RE: 02-14529-JJ      Richard Cottone v. Kenneth C. Jenne, II
DC DKT NO.:  00-07545 CV-WJZ

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
     Original record on appeal or review, consisting of: four volumes

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter and the judgment form, <u>but not a copy of the court's opinion or Rule 36-1 decision,</u> is also being mailed to counsel and pro se parties. A copy of the court's opinion or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (8-2002)

# United States Court of Appeals

## For the Eleventh Circuit

*$ SS*

|  |  |
|---|---|
| No. 02-14529 | **FILED**<br>U.S. COURT OF APPEALS<br>ELEVENTH CIRCUIT<br><br>Apr 11, 2003<br><br>THOMAS K. KAHN<br>CLERK |
| District Court Docket No.<br>00-07545-CV-WJZ | |

Filed by Appeals _____
Non - Compliance with
FRAP 4 (b)

**MAY 2 8 2003**

Ft. Lauderdale Clerk's Office

RICHARD COTTONE, as personal
representative of the Estate of
Peter Anthony Cottone, Jr.,
PETER COTTONE, SR.,

        Plaintiffs-Appellees,

versus

KENNETH C. JENNE, II,
individually and in his official capacity
as Sheriff of Broward County, Florida,
JOSEPH D'ELIA,
GEORGE WILLIAMS, individually and in his
official capacity as Deputy Sheriff and/or
Correction Officer of the Broward County
Sheriff's Office,
PATRICK TIGHE, individually and in his
official capacity as Executive Director
of the Department of Detention, Broward
Sheriff's Office,
DWIGHT ST. CLAIRE,
DELORES WATSON,
BARBARA LAW,

        Defendants-Appellants,

BROWARD COUNTY SHERIFF'S OFFICE,
JOHN DOES, individually and in their
official capacity as Directors and/or
supervisors of the North Broward Detention Center,
et al.,

        Defendants.



A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

---------------------------------------------------------------

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:         April 11, 2003
For the Court:   Thomas K. Kahn, Clerk
           By:   Gilman, Nancy

ISSUED AS MANDATE
MAY 2 3 2003
U.S. COURT OF APPEALS
ATLANTA, GA.

ORIGINAL       COTTONE v. JENNE  CORRECTED                    1961

Richard COTTONE, as personal represen-
tative of the Estate of Peter Anthony
Cottone, Jr., Peter Cottone, Sr., Plain-
tiffs–Appellees,

v.

Kenneth C. JENNE, II, individually and in
his official capacity as Sheriff of Bro-
ward County, Florida, Joseph D'Elia,
George Williams, individually and in his
official capacity as Deputy Sheriff
and/or Correction Officer of the Bro-
ward County Sheriff's Office, Patrick
Tighe, individually and in his official
capacity as Executive Director of the
Department of Detention, Broward
Sheriff's Office, Dwight St. Claire, De-
lores Watson, Barbara Law, Defen-
dants–Appellants,

Broward County Sheriff's Office, John
Does, individually and in their official
capacity as Directors and/or supervisors
of the North Broward Detention Center,
et al., Defendants.

No. 02–14529.

United States Court of Appeals,
Eleventh Circuit.

April 11, 2003.

In § 1983 suit arising out of pretrial
detainee's death at the hands of mentally ill
co-inmate, individual defendants moved to
dismiss for failure to state a claim, raising
defense of qualified immunity. The United
States District Court for the Southern Dis-
trict of Florida, No. 00-07545-CV-WJZ, Wil-
liam J. Zloch, J., denied motion. Defendants
filed interlocutory appeal. The Court of Ap-
peals, Hull, Circuit Judge, held that: (1)
amended complaint sufficiently alleged that

guards violated detainee's clearly established
Fourteenth Amendment rights, so they were
not entitled to qualified immunity, but (2)
supervisory officials were entitled to qualified
immunity, absent allegation of constitutional
violation on their part.

Affirmed in part; reversed in part.

1. Constitutional Law ⬒262
Sentencing and Punishment ⬒1532
   Standard for according basic human
needs to those incarcerated or in detention is
the same under both the Eighth and Four-
teenth Amendment.    U.S.C.A.    Const.
Amends. 8, 14.

2. Federal Courts ⬒574
   Denial of qualified immunity on motion
to dismiss is appealable interlocutory order.
Fed.Rules    Civ.Proc.Rule    12(b)(6),    28
U.S.C.A.

3. Federal Courts ⬒776
   Court of Appeals reviews de novo dis-
trict court's denial of qualified immunity.

4. Federal Courts ⬒776
   Determination of whether § 1983 com-
plaint sufficiently alleges constitutional viola-
tion is matter of law reviewed de novo. 42
U.S.C.A. § 1983.

5. Federal Civil Procedure ⬒1752.1
   Complaint is subject to dismissal for fail-
ure to state a claim when its allegations, on
their face, show that affirmative defense bars
recovery on the claim.   Fed.Rules Civ.Proc.
Rule 12(b)(6), 28 U.S.C.A.

6. Federal Civil Procedure ⬒1752.1, 1828
   Unless plaintiff's allegations state claim
of violation of clearly established law, defen-

Synopsis, Syllabi and Key Number Classification
COPYRIGHT © 2003 by WEST GROUP

The Synopsis, Syllabi and Key Number Classifi-
cation constitute no part of the opinion of the court.

1962                                COTTONE v. JENNE

dant pleading qualified immunity is entitled to dismissal before the commencement of discovery; absent such allegations, it is appropriate for district court to grant defense of qualified immunity at the motion to dismiss stage. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**7. Civil Rights ⚖︎214(2)**

Defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities, unless their conduct violates clearly established statutory or constitutional rights of which reasonable person would have known.

**8. Civil Rights ⚖︎240(5)**

To receive qualified immunity from liability for civil rights violation, government official first must prove that he was acting within his discretionary authority; once governmental official does this, burden shifts to plaintiff to show that official is not entitled to qualified immunity.

**9. Civil Rights ⚖︎214(1, 2)**

Under two-part test to determine applicability of qualified immunity, threshold inquiry is whether plaintiff's allegations, if true, establish a constitutional violation; if they do, next sequential step is to ask whether the right was clearly established.

**10. Constitutional Law ⚖︎272(2)**

Prison official's deliberate indifference to known, substantial risk of serious harm to inmate violates the Fourteenth Amendment when substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk; such risk must be objectively substantial risk of serious harm to prisoners, prison official must respond to that risk in objectively unreasonable manner, and plaintiff must show that the constitutional violation caused the injury. U.S.C.A. Const. Amend. 14.

**11. Civil Rights ⚖︎214(7)**
    **Constitutional Law ⚖︎262**

Allegations of pretrial detainee's estate, if true, established violation of detainee's Fourteenth Amendment rights, for purposes of determining whether prison guards on duty at time detainee was killed by co-inmate were entitled to qualified immunity from liability under § 1983; co-inmate allegedly had history of violent outbursts and mental instability and was in midst of violent schizophrenic outrage prior to murdering detainee, guards were subjectively aware of substantial objective risk of serious harm that co-inmate posed to other inmates, and their response to risk was objectively unreasonable insofar as neither of them was monitoring inmates at all during either pre-murder outburst or murder itself. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**12. Civil Rights ⚖︎214(7)**

Case law of Eleventh Circuit clearly established that prison guards' total failure to monitor known violent inmate housed in unit for mentally ill inmates was unconstitutional deliberate indifference to Fourteenth Amendment rights of pretrial detainee who was murdered by that inmate following violent schizophrenic outburst; thus, guards were not entitled to qualified immunity in § 1983 action by detainee's estate. U.S.C.A. Const.Amend. 14; 42 U.S.C.A § 1983.

**13. Civil Rights ⚖︎207(2)**

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat supe-

rior or vicarious liability. 42 U.S.C.A. § 1983.

**14. Civil Rights ⚯207(2)**

Supervisory liability under § 1983 occurs either when supervisor personally participates in the alleged unconstitutional conduct or when there is causal connection between actions of supervising official and alleged constitutional deprivation; necessary causal connection can be established when history of widespread abuse puts responsible supervisor on notice of need to correct alleged deprivation and he fails to do so, or alternatively when supervisor's custom or policy results in deliberate indifference to constitutional rights or facts support inference that supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. 42 U.S.C.A. § 1983.

**15. Civil Rights ⚯207(2), 214(7)**

Prison officials were entitled to qualified immunity from § 1983 liability for their failure to train and supervise guards on duty at time of pretrial detainee's murder by mentally ill co-inmate, absent allegation of any constitutional violation on their part; although officials were on notice of widespread unconstitutional conduct at county jail in question as result of consent decree prescribing, inter alia, requirements for classification, separation, housing and monitoring of inmates, they had complied with decree's relevant terms, did not direct guards not to monitor inmates,

and had no knowledge of their failure to do so. 42 U.S.C.A. § 1983.

———

Appeal from the United States District Court for the Southern District of Florida.

Before HULL, MARCUS and FARRIS *, Circuit Judges.

HULL, Circuit Judge:

In this § 1983 suit, defendants Joseph D'Elia, George Williams, Patrick Tighe, Dwight St. Claire, Delores Watson, and Barbara Law, all in their individual capacities, appeal the district court's order denying their Rule 12(b)(6) motion to dismiss raising the defense of qualified immunity. After review and oral argument, we affirm the district court's denial of qualified immunity for defendants D'Elia and Williams, and reverse its denial of qualified immunity for defendants Tighe, St. Claire, Watson, and Law.

**I.  BACKGROUND**

This appeal involves the death of Peter Cottone, Jr. ("Cottone") while he was detained in the North Broward Detention Center. Given the Rule 12(b)(6) posture of the case, we first review the allegations of the amended complaint as if all the allegations contained therein were true.[1]

---

\* Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

1. *See Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir.2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts. *Cf. Swint v. City of Wadley*, 51 F.3d 988, 992 (11th Cir.1995).

## A. Cottone's Detention

On March 9, 1999, Cottone was involved in a physical altercation with his father, Peter Cottone, Sr. As a result of this violent incident, Cottone involuntarily was transported to Memorial Hospital in Broward County, Florida under Florida Statute § 394.467, for observation and evaluation.[2] On March 14, 1999, Cottone was moved to the Broward County Jail and was booked, assessed, and classified. As a result of the assessment and classification, Cottone was transferred from the Broward County Jail to Unit 1 of the North Broward Detention Center, which houses mentally ill inmates.

At the time of Cottone's detention, the Broward County Sheriff, employees working at the jail, and the Broward County Board of Commissioners were subject to a consent decree stemming from *Carruthers v. Cochran*, Case No. 76–6068–CIV–HOEVELER (S.D.Fla.), which was intended to ameliorate unconstitutional conditions of confinement in the Broward County jail system. The consent decree prescribed, *inter alia*, requirements for classification, separation, housing, and monitoring of inmates, as well as acceptable use-of-force levels, minimum medical care requirements, and availability of recreational activities.

## B. Charles's Detention

On March 1, 1999, Widnel Charles ("Charles") was arrested. Prior to his arrest, Charles had been detained involuntarily under Florida Statute § 394.467 on numerous occasions due to his violent tendencies and a history of schizophrenia. While in the booking area of the Broward County Jail on

March 1, Charles struck another inmate. Both a deputy sheriff and a nurse in the booking area observed and documented Charles's outburst. Charles originally was placed in the general population at the Broward County Jail. On March 6, however, he was reassessed and transferred from the Broward County Jail to the North Broward Detention Center.

On April 1, a staff psychiatrist at the North Broward Detention Center determined that Charles was mentally stable and reduced the psychotropic medicine to be administered to him. On April 6, Charles was placed into Unit 1 of the North Broward Detention Center with Cottone and Albert St. Hubert, the third and only other inmate in Unit 1. Although there were three separate cells in Unit 1, the doors to the cells remained unlocked, allowing the three inmates to interact with each other.

## C. Charles Attacks Cottone

On April 7, guards D'Elia and Williams were summoned to Unit 1 by inmate St. Hubert. When D'Elia and Williams arrived, they found Cottone unconscious on the floor with ligature marks around his neck. During a schizophrenic episode, Charles allegedly strangled Cottone with shoelaces. After Charles's attack, Cottone was taken to North Broward Medical Center, where he died.

The amended complaint alleges that Charles's mental condition and the risk of serious harm that Charles posed to the other inmates was known by D'Elia and Williams. Specifically, the amended complaint alleges that prior to the murder incident, Charles was violent, out-of-control, and experiencing

---

2. Florida Statute § 394.467, known as the "Baker Act," allows a person to be placed involuntarily in a treatment facility if clear and convincing evidence indicates that the person is mentally ill, and, *inter alia*, there is a substantial likelihood that, based on recent behavior, the person will inflict serious bodily harm on himself or another person. Fla. Stat. § 394.467(1)(a).

a schizophrenic episode and that Charles's mental condition would have been obvious to D'Elia and Williams if they had been watching the monitor. The amended complaint further alleges that D'Elia and Williams did not monitor the inmates housed in Unit 1 that day but were watching computer games, as follows:

> Surveillance cameras mounted in the Day Room of Unit 1 were aimed at the three cells, however, they were not being monitored at the time of the incident.

> At the time of the incident, a computer game was observed on the screen of the computer in the control room where the Defendants D'ELIA and WILLIAMS were stationed.

Amended Complaint, para. 50–51.

### D.  Procedural History

[1]  Plaintiffs Richard Cottone, on behalf of the Estate of Peter Cottone, Jr., and Peter Cottone, Sr. brought this § 1983 action against numerous defendants, including defendants D'Elia, Williams, Tighe, St. Claire, Watson, and Law in their individual capacities as a result of Cottone's death while he was detained in Unit 1 of the North Broward Detention Center.[3]  In their amended complaint, the plaintiffs allege two separate claims against the defendants.  First, the plaintiffs allege that the defendants D'Elia's and Williams's reckless indifference toward a

substantial risk of serious inmate harm at the North Broward Detention Center, which led to Cottone's death, violated the Eighth Amendment's prohibition against cruel and unusual punishment.[4]  Second, the plaintiffs allege that defendants Tighe, St. Claire, Watson, and Law have supervisory liability for Cottone's death due to their failure to train and to supervise deputy sheriffs and corrections officers under their control.

[2]  On April 18, 2002, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The district court denied the defendants' Rule 12(b)(6) motion, concluding, *inter alia,* that the defendants in their individual capacities are not entitled to qualified immunity.  The defendants subsequently filed this interlocutory appeal.[5]

### II.  STANDARD OF REVIEW

[3, 4]  We review *de novo* a district court's denial of qualified immunity.  *See Jordan v. Doe,* 38 F.3d 1559, 1563 (11th Cir.1994); *Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir.1990).  The determination of whether a complaint sufficiently alleges a constitutional violation also is a matter of law reviewed *de novo.  See GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998).  In reviewing a complaint, we accept all well-pleaded factual allegations

---

3.  All parties agree that Sheriff Kenneth C. Jenne, II is not a party to this appeal.  The amended complaint names Sheriff Jenne as a defendant solely in his official capacity.

4.  Because Cottone was a pretrial detainee at the time of the incident, the relevant constitutional guarantee is not the Eighth Amendment's prohibition against cruel and unusual punishment, but rather the Due Process Clause of the Fourteenth Amendment. *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Nonetheless, we previously have stated that "the

standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Marsh,* 268 F.3d at 1024 n. 5. The plaintiffs' amended complaint notwithstanding, we will refer to their claims as arising under the Fourteenth Amendment.

5.  The denial of qualified immunity on a motion to dismiss is an appealable interlocutory order. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

**1966**                              COTTONE v. JENNE



as true and construe the facts in the light most favorable to the plaintiff. *See id.; Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir.1997).

### III.  DISCUSSION

#### A.  *Rule 12(b)(6) Motions*

[5, 6]  A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Marsh v. Butler County,* 268 F.3d 1014, 1022 (11th Cir.2001) (*en banc*). "Once the affirmative defense of qualified immunity is advanced ... [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (internal quotation marks omitted). Absent such allegations, "[i]t is ... appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage." *Gonzalez v. Reno,* — F.3d — (11th Cir.2003). Thus, if the defendants in this case are entitled to qualified immunity, then their Rule 12(b)(6) motion to dismiss must be granted and the plaintiffs' suit must be dismissed.

#### B.  *Qualified Immunity Principles*

[7, 8]  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez,* — F.3d at — (quoting *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)); *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002). To receive quali-

fied immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez,* — F.3d at — (citing *Vinyard,* 311 F.3d at 1346). In this case, it is clear-and undisputed-that defendants D'Elia, Williams, Tighe, St. Claire, Watson, and Law were acting within their discretionary authority.

[9]  Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Vinyard,* 311 F.3d at 1346. The Supreme Court has established a two-part test to determine the applicability of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope,* 122 S.Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

#### C.  *Liability of Guards D'Elia and Williams*

We first examine whether the plaintiffs' amended complaint alleges a Fourteenth Amendment violation committed by defendants D'Elia and Williams.

##### 1.  *Constitutional Violation Under the Fourteenth Amendment*

[10]  "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment." *Marsh,* 268 F.3d at 1028.  A Fourteenth Amendment violation

occurs when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. *Id.* Furthermore, such risk must be an objectively substantial risk of serious harm to prisoners, and the prison official must respond to that risk in an objectively unreasonable manner. *Farmer v. Brennan,* 511 U.S. 825, 834, 844–845, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Finally, a plaintiff must show that the constitutional violation caused the injury. *Marsh,* 268 F.3d at 1028.

[11] We conclude that the plaintiffs' amended complaint sufficiently alleges a violation of Cottone's Fourteenth Amendment rights. According to the amended complaint, Cottone's co-inmate, Charles, had a history of violent outbursts and mental instability and was in the midst of a violent schizophrenic outrage prior to his murdering Cottone. Given his visibly violent, mentally unstable state, Charles posed an objective risk of serious harm to other inmates, including Cottone.

Furthermore, based on the allegations in the plaintiffs' amended complaint, D'Elia and Williams were subjectively aware of the substantial risk of serious harm that Charles posed to the other inmates. First, D'Elia and Williams were assigned to Unit 1 in the North Broward Detention Center. Thus, D'Elia and Williams knew they were monitoring mentally ill inmates, who were so mentally ill that they had been assessed, classified, and separated for housing in Unit 1 of the North Broward Detention Center. Second, they were aware of the substantial risk of serious harm that Charles individually posed to other inmates based on his violent, schizophrenic outbursts which occurred prior to the murder incident. They were the guards on duty when Charles entered the throws of a violent schizophrenic outburst prior to murdering Cottone.

D'Elia's and Williams's response to the risk also was objectively unreasonable. According to the plaintiffs' amended complaint, neither D'Elia nor Williams was monitoring the inmates at all during the time either of Charles's violent schizophrenic outburst prior to the murder or of Charles's murder of Cottone. Plaintiffs allege that D'Elia and Williams took consecutive breaks during this time and that a computer game was observed on the computer screen at their monitoring station at the time of the murder.

Plaintiffs' amended complaint also alleges that the total lack of monitoring and supervision of Charles caused Cottone's death. They further allege that D'Elia's and Williams's failure to monitor a known violent, unstable inmate, like Charles, caused Cottone's death.

In sum, at this Rule 12(b)(6) stage, we conclude that the plaintiffs' amended complaint adequately alleges (1) an objective, substantial risk of serious harm to inmates existed, (2) D'Elia and Williams subjectively were aware of the substantial risk of serious harm, (3) D'Elia and Williams responded in an objectively unreasonable manner to that risk, and (4) this constitutional violation caused Cottone's death.

*2. Violation of Clearly Established Law*

[12] Because the plaintiffs' amended complaint sufficiently alleges a consitutional violation, we next determine whether preexisting law clearly established that the defendants' conduct amounted to a constitutional violation. *Vinyard,* 311 F.3d at 1349 ("Because [the defendant]'s conduct violated a constitutional right, the next question is whether that constitutional right was 'clearly established' at the time of the violation.");



**1968**                                   COTTONE v. JENNE

*Marsh*, 268 F.3d at 1030–31 ("A government-officer defendant is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compels, the conclusion ... that what Defendant was doing violated Plaintiffs' federal rights.") (internal quotation marks and citation omitted). " 'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Vinyard*, 311 F.3d at 1350 (quoting *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151). In making this inquiry, "the salient question ... is whether the state of the law ... gave [the guards] fair warning that their alleged [conduct] was unconstitutional." *Hope*, 122 S.Ct. at 2516.

We can locate at least two factually similar cases, decided prior to the conduct in question, in which a lack of monitoring and supervision of known violent inmates, which led to inmate-on-inmate violence, constituted impermissible unconstitutional conduct. In *LaMarca v. Turner*, 995 F.2d 1526, 1536–38 (11th Cir.1993), this Court determined that a prison official's failure to ensure adequate supervision and monitoring of inmates with a history of inmate-on-inmate violence was a violation of the Eighth Amendment. In *LaMarca*, despite reported incidents of prior inmate-on-inmate violence, prison authorities did not station officers to patrol throughout the inmate dormitories, particularly at night. *Id.* at 1538. Prison authorities also allowed inmates to hang sheets, obstructing the guards' views, and preventing them from adequately supervising the inmates. *Id.* Thus, in *LaMarca*, there was an absence of adequate supervision despite a substantial risk of serious harm from inmate-on-inmate violence.

Similarly, in *Hale v. Tallapoosa County*, 50 F.3d 1579, 1584 (11th Cir.1995), an inmate was assaulted by another inmate during the lengthy time between the jailer's scheduled rounds. *Id.* at 1581. This assault occurred despite past incidents of inmate-on-inmate violence because, other than making rounds, the jailer in *Hale* was "stationed out of eyesight and earshot" of the inmates. *Id.* at 1584. Based on these facts, this Court in *Hale* recognized unconstitutional conditions of confinement existed because there was a lack of inmate supervision and a substantial risk of serious harm from known violent inmates.

The plaintiffs have made similar allegations in this case. Under the plaintiffs' version of the facts, the guards knew that Charles represented a substantial risk of serious harm because he was violent, out-of-control and in the throes of schizophrenia during his detention in Unit 1 prior to the murder incident. D'Elia and Williams were assigned to supervise Charles as one of the mentally ill inmates in Unit 1, but did not do so. Instead, they took consecutive breaks and watched video games. Thus, just as there was no supervision of known violent inmates in *LaMarca* and *Hale*, in this case guards D'Elia and Williams did not monitor and supervise Charles, a known violent inmate who posed a substantial risk of serious harm to the other inmates.

We conclude that prior factually similar case law gave fair and clear warning to D'Elia and Williams that it was their duty to monitor and to supervise known violent inmates who posed a substantial risk of serious harm to other inmates. *See Vinyard*, 311 F.3d at 1346. The law of this circuit "clearly establishes" that their total failure to monitor a known violent inmate housed in Unit 1, a housing unit for mentally ill inmates, constitutes unconstitutional deliberate indifference to Cottone's Fourteenth Amendment rights.

Thus, given the plaintiffs' version of the events, defendants D'Elia and Williams are not entitled to qualified immunity at this Rule 12(b)(6) stage.

### D. Supervisory Liability of Tighe, St. Claire, Watson, and Law

[13, 14] "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez*, —— F.3d at —— (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, —— F.3d at ——; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, —— F.3d at —— (quoting *Braddy v. Fla. Dept. of Labor & and Employment*, 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, —— F.3d at —— (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley*, 193 F.3d at

1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560–61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, —— F.3d at —— (internal quotation marks and citation omitted).

[15] The plaintiffs do not allege that defendants Tighe, St. Claire, Watson, and Law personally participated in the alleged unconstitutional conduct which led to Cottone's death. Instead, the plaintiffs allege that there is a causal connection between these defendants and Cottone's death based on the defendants' failure to train and to supervise guards D'Elia and Williams. The plaintiffs allege that the defendants were on notice of the widespread unconstitutional conduct at the Broward County Jail through the consent decree and that the defendants failed to rectify such conduct.

The consent decree generally addresses unconstitutional practices at the Broward County Jail with respect to conditions of confinement, specifically the classification, separation, housing, and monitoring of inmates. In broad terms, the consent decree requires that assessment and classification of inmates be ongoing, that inmates continuously be assessed and classified based on an inmate's "social, legal, and . . . medical history," and that each Broward County detention facility have its own classification officer. The consent decree also requires prison officials to separate and to supervise inmates closely, particularly those "who present a threat to the staff, other inmates, or themselves." With respect to monitoring these types of inmates, the consent decree requires "regular, documented sight checks . . . at

**1970**                              COTTONE v. JENNE

intervals not to exceed 15 minutes." Other than a time interval, however, the consent decree does not specify any details as to how such monitoring should be performed.

The problem for the plaintiffs here is that the allegations in the amended complaint itself show that the supervisors complied with the relevant terms of the consent decree. According to the amended complaint, Broward County Jail officials, including Dr. Maurice Waldman,[6] assessed Charles and classified him as a mentally ill inmate. As part of the ongoing inmate assessment procedures in place, Dr. Waldman reduced Charles's psychotropic medication. Based on the assessment and classification procedures in place, Charles was transferred to separate housing for mentally ill inmates in Unit 1 of the North Broward Detention Center. Furthermore, there were surveillance cameras installed that allowed the guards to monitor continuously the inmates housed in Unit 1. Indeed, two guards, D'Elia and Williams, specifically were assigned to monitor the inmates in Unit 1. By its own allegations, the amended complaint itself acknowledges that the supervisors put in place the necessary procedures to abide by the consent decree. Thus, the consent decree itself does not provide notice to establish a causal connection between the supervisors and Cottone's death.

Furthermore, the plaintiffs do not allege any specific facts at all connecting the supervisors to D'Elia's and Williams's failure to monitor the inmates in Unit 1. There is no allegation that supervisors directed the subordinate guards not to monitor inmates or to act unlawfully. The amended complaint also does not make any allegations that the supervisors had any knowledge of D'Elia's and Williams's failure to monitor inmates or that D'Elia and Williams had any past history, or even one prior incident, of failing to monitor inmates or of watching computer games. The supervisors were not on any notice of D'Elia's and Williams's unconstitutional conduct so as to put the supervisors on notice of the need to correct or to stop the conduct of D'Elia and Williams by further training or supervision. Thus, the plaintiffs fail to establish the necessary causal connection between the supervisors and the unconstitutional conduct in issue for supervisory liability to be imposed. *See Gonzalez*, —— F.3d at —— (concluding that in the absence of a causal connection between the supervisors and the alleged unconstitutional conduct, there is no basis for supervisory liability).

The plaintiffs also do not allege any affirmative custom or policy implemented by the supervisory defendants that played a role in Cottone's death. *See id.* Nor do they allege that the supervisors instructed D'Elia and Williams to commit constitutional violations. *See id.* As a result, the amended complaint does not allege the causal connection required to impose supervisory liability against these defendants.[7]

Thus, the plaintiffs have failed to allege that defendants Tighe, St. Claire, Watson, and Law committed a constitutional viola-

---

6. Although not a party to this appeal, Dr. Waldman is a defendant in this case before the district court.

7. In examining the factual allegations in a complaint, we must keep in mind the heightened pleading requirements for civil rights cases, espe-

cially those involving qualified immunity. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998). However, as to supervisory liability in this case, the plaintiffs' amended complaint fails to meet even a relaxed pleading requirement.

tion.[8] Because the amended complaint fails to allege a constitutional violation committed by the supervisory defendants, we need not reach the "clearly established law" prong of the qualified immunity inquiry with respect to supervisory liability. *See Vinyard,* 311 F.3d at 1346 ("If a constitutional right would have been violated under the plaintiff's version of the facts, the *next, sequential* step is to ask whether the right was clearly established.") (internal quotation marks and citation omitted) (emphasis added). Accordingly, we conclude that defendants Tighe, St. Claire, Watson, and Law are entitled to qualified immunity and that the district court erred in failing to grant these defendants' Rule 12(b)(6) motion to dismiss.

## IV.   CONCLUSION

For the reasons stated above, we reverse the district court's denial of the defendants Tighe, St. Claire, Watson, and Law's Rule 12(b)(6) motion to dismiss based on qualified immunity and affirm the district court's denial of defendants D'Elia and Williams's Rule 12(b)(6) motion to dismiss based on qualified immunity.

AFFIRMED IN PART; REVERSED IN PART.

---

8.  At all times, the plaintiffs have been represented by legal counsel. Never in the district court did the plaintiffs seek to amend the complaint (for example, by adding facts), even after the complaint's sufficiency had been challenged specifically and the qualified immunity defense expressly advanced by opposing counsel. Thus, we decline to remand this case to the district court for further amendments to the plaintiffs' already amended complaint.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Adm. Office, U.S. Courts—West Group, Saint Paul, Minn.